## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

VICKI L. HIGGINS                                    Case No. 10-577-JFC

      Plaintiff,

vs.

PATENAUDE & FELIX, A.P.C.,
GREGG L. MORRIS, ESQUIRE, and
TARGET NATIONAL BANK

### PLAINTIFF'S REPLY TO THE MOTION FOR SUMMARY JUDGMENT FILED ON BEHALF OF GREGG L. MORRIS, ESQUIRE AND TARGET NATIONAL BANK

The Fair Debt Collection Practices Act prohibits debt collectors from engaging in various abusive and unfair practices. *Heintz v. Jenkins*, 514 U.S. 291, 292-93 (1995). The statute was enacted to eliminate abusive debt collection practices; to ensure that debt collectors who abstain from such practices are not competitively disadvantaged; and to promote consistent state action to protect consumers. 15 U.S.C. § 1692(e); *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, ___ U.S. ___, ___, 130 S.Ct. 1605, 1608-09 (2010). The statute defines a "debt collector" as one who "regularly collects ... debts owed or due or asserted to be owed or due another," 15 U.S.C. § 1692a(6), and covers lawyers who regularly collect debts, *Heintz*, 514 U.S. at 293-94.

I.  **A JURY COULD REASONABLY CONCLUDE THAT THE DEBT AROSE OUT OF TRANSACTIONS THAT WERE PRIMARILY FOR PERSONAL, FAMILY, OR HOUSEHOLD PURPOSES**

Section 1692a(5) of the Fair Debt Collection Practices Act defines "debt" to include "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction

are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

In *Bitah v. Global Collection Services, Inc.*, 968 F. Supp. 618 (D. New Mexico 1997), the defendant asked for summary judgment arguing  Mr. Bitah could not prove that the debt arose out of transactions that were primarily for personal, family, or household purposes. The Court rejected this argument when Mr. Bitah provided a copy of the vehicle installment contract stating Mr. Bitah intended to use the vehicle primarily for personal, family or household purposes.  The Court concluded that Mr. Bitah brought forth sufficient evidence that the debt was for a consumer transaction and the defendant did not counter with any evidence the transaction was for a commercial purpose.

In this case, Plaintiff provides the credit card agreements.  In the first paragraph on page one of the "Target Credit Card Agreement"  it states, "By use of this account, you agree to the terms of this Agreement. This account may be used only for personal, family or household purposes. **(Exhibit A)**. On page three, paragraph one titled, "USE OF YOUR ACCOUNT", the "Target Visa Credit Card Agreement" states, "When you apply for an Account, you promise to be bound by the terms of this Agreement....This Account may be used only for personal, family or household purposes." **(Exhibit B)**.

In their motion and brief, the defendants do not counter with any evidence the transactions were for a commercial purpose.

## II.   A REASONABLE JURY COULD REJECT DEFENDANTS' BONA FIDE ERROR DEFENSE

1.   BONA FIDE ERROR PROVIDES A NARROW EXCEPTION TO STRICT LIABILITY UNDER THE FDCPA AND DEFENDANTS BEAR THE BURDEN OF PROOF ON THIS AFFIRMATIVE DEFENSE

Defendants ask the Court to grant summary judgment on their bona fide error defense. 15 U.S.C. § 1692k(c) sets forth the defense:

> A debt collector may not be held liable in any action brought under [the FDCPA] if the debt collector shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

The bona fide error defense is a narrow exception to the rule that the FDCPA is a strict liability statute and does not require proof of intent. *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162,1177 (9th Cir. 2006); *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F. 3d 991 (7th Cir. 2003). It is an affirmative defense and the collector bears the burden of proving the defense by a preponderance of the evidence. *Clark , supra; Turner, supra; Fox v. Citicorp Credit Servs., Inc.*, 15 F.3d 1507 (9th Cir. 1994).

For a debt collector defendant to prevail under the bona fide error defense, the debt collector must show "that the violation was (1) unintentional, (2) resulted from a bona fide error, and (3) made despite the maintenance of procedures reasonably adapted to avoid the error." *Johnson v. Riddle*, 305 F.3d 1107,1121 (10th Cir. 2002) (quotations omitted) ("*Johnson I*"), overruled on other grounds by *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, ___ U.S. 130 S.Ct. 1605, 176 L.Ed.2d 519 (2010); Beck v. Maximus, Inc., 457 F.3d 291, 297-98 (3d Cir. 2006); *Kort v. Diversified Collection Services, Inc.*, 394 F.3d 530,537 (7th Cir. 2005).

## 2.   A BONA FIDE ERROR DEFENSE TYPICALLY GOES TO THE JURY

Whether the defense has been met is typically a question of fact. *McDaniel v. South & Assocs., P.C.*, 325 F. Supp. 2d 1210 (D. Kan. 2004) (whether collector's computerized case management system was reasonably adapted to avoid collection action after notice of a dispute, and whether the continued collection was a clerical error, were questions of fact for the jury); *Teemogonwuno v. Todd, Bremer & Larsen, Inc.*, 1991 U.S. Dist. LEXIS 21720 (N.D. Ga.

June 13, 1991) (bona fide error defense required trial).  Reasonableness of procedures is

question for the jury.  *Gaisser v. Portfolio Recovery Assocs., LLC,* 593 F. Supp. 2d 1297 (S.D. FL

2009); *Beattie v. DM Collections, Inc.*, 745 F. Supp. 383, 393 (D. Del. 1991).  *See also Owens v. I.C.*

*System,* 2011 U.S. App. LEXIS 330 (11th Cir. 2011) (the third element is a fact based inquiry).

3.     BONA FIDE ERROR ONLY APPLIES TO PROCEDURAL OR
       CLERICAL ERRORS AND A REASONABLE JURY COULD
       DETERMINE THAT DEFENDANTS ACTED INTENTIONALLY

It appears Defendants are claiming that the error leading to the FDCPA violation

was "a case of mistaken identity."  The Defendants argue since they did not have any

intention to violate the FDCPA, the first prong of the BFE defense is met.

In making this argument, Defendants fail to consider *Jerman v. Carlisle, McNellie, Rini,*

*Kramer & Ulrich LPA*, ___ U.S. ___, 130 S.Ct. 1605, 176 L.Ed.2d 519 (2010).  On April 21, 2010

the United States Supreme Court resolved a circuit split on whether the bona fide error

defense can be applied to mistakes of law.  The Supreme Court came down on the side of

the circuit courts that had limited the bona fide error defense to clerical or factual errors.

*Id.* at 1610, 526 *quoting Jerman*, 538 F.3d at 473 ("majority view is that the defense is available

for clerical and factual errors only").

Interpreting *Jerman*, the Court in *Bassett v. I.C. System, Inc.*, ___ F. Supp.2d___, ___,

2010 WL 2179175, *6-7 (N.D. Ill. June 1, 2010) stated:

> Next I.C. System argues that it cannot be held liable for any alleged FDCPA
> violations under the bona fide error defense pursuant to 15 U.S.C. § 1692k(c).
> Indeed, the FDCPA contains two exceptions to provisions imposing liability
> on debt collectors, including Section 1692k(c), which provides that "[a] debt
> collector may not be held liable in any action brought under [the FDCPA] if
> the debt collector shows by a preponderance of evidence that the violation
> was not intentional and resulted from a bona fide error notwithstanding the
> maintenance of procedures reasonably adapted to avoid any such error."
> *Jerman*, 130 S.Ct. at 1609 (quoting 15 U.S.C. § 1692k(c)).  In *Jerman*, the
> Supreme Court held that the bona fide error defense does not apply to a

mistake of law, namely, a violation of the FDCPA that results from the debt collector's mistaken interpretation of the FDCPA. *See Id.* at 1612-14.  In other words, a debt collector's conduct may be intentional even if he lacked the actual knowledge that his conduct violated the FDCPA. *See Id.* at 1612.  As such the bona fide error defense under Section 1692k(c) only applies to procedural or clerical errors. *See Id.* at 1616.

Bassett's only remaining FDCPA claim is pursuant to Section 1692d(5) in which I.C. System admits that it made thirty-one collection calls to Bassett over a twelve day time period.  In connection with this claim, I.C. System does not argue that it committed a procedural or clerical error.  Instead, I.C. System makes its argument under the *pre-Jerman* paradigm and explains that it had procedures and policies in place to avoid any such errors.  *See Ruth*, 577 F.3d at 804; *Seeger v. AFNI, Inc.*, 548 F.3d 1107,1114 (7th Cir. 2008).  Because I.C. System admits that it made thirty-one collection calls, its defense is not based on a clerical or procedural error.  The Court thereby denies I.C. System's motion based on the bona fide error defense.  *See Jerman*, 130 S.Ct. at 1612-14.

Following *Jerman*,  other courts have held that where the action that is the basis of the claimed error was the result of a choice or judgment then bona fide error must be rejected as a matter of law. *See Allen v. Checkredi of Kentucky, LLC*, No. 09-CV-103, 2010 U.S. Dist. LEXIS 122301 at *30 (E.D. Ky. Nov. 17, 2010) ("Defendant's act of orally communicating that Plaintiff owed a debt to Plaintiff's father was intentional" and thus bona fide error could not apply); *McNall v. Credit Bureau of Josephine County, Inc.*, No. 07-CV-3075, 2010 U.S. Dist. LEXIS 85619 at *9 (D. Or. Aug 19, 2010) (bona fide error unavailable where defendant "made a conscious decision not to report Plaintiff's debt as disputed"). Federal courts interpreting *Jerman* have also made explicit that which was implicit in the Supreme Court's *Jerman* opinion: "Following *Jerman*, the intentional prong of the bona fide error defense can no longer be whether a defendant specifically intended its actions to violate the FDCPA." *Allen*, 2010 U.S. Dist. LEXIS 122301 at *28-29.

The intentional/unintentional prong of the bona fide error test requires more than the collector's assertion that it did not intend to violate the FDCPA.  Rather, the debt

collector must prove that the action itself was unintentional, i.e. procedural or clerical error. Defendants, with their bona fide error defense, fail to take into account this change in the law. Defendants argue that they had no intention to pursue the wrong person for the debt owed to Target National Bank. Defendants do not argue that a procedural or clerical error led to the FDCPA violation. Defendants' argument is predicated on the assumption that only acts that were intended to violate the FDCPA can be intentional acts under bona fide error analysis. Defendants' assumption is wrong after *Jerman*.

Even if this case took place *pre-Jerman*, there is evidence that Defendants knew they had the wrong person, yet continued to go after that person. On May 14, 2009, Target e-mailed defendants to remove the phone number from defendants' dialer and instructed them as follows, "NO MORE CALLS TO WRONG PERSON." **(Exhibit C)**. Despite this e-mail, Defendants didn't discontinue attempting to collect this debt from the Plaintiff until September 2, 2009 -- two days after Plaintiff's Attorney, Jeffrey D. Monzo, served a Request for Production of Documents. **(Exhibit D)**.

4.    A REASONABLE JURY COULD FIND THAT DEFENDANTS DID NOT MAINTAIN REASONABLE PROCEDURES

Although not necessary because of Defendants' failure to meet the first prong of the bona fide error test, for the sake of completeness, Plaintiff also notes that Defendants cannot obtain summary judgment since they do not meet the third prong of the bona fide error test. Even if the collector has shown that a violation was unintentional and a bona fide error, to prevail on the defense it must introduce evidence to meet its burden of showing that the collector had in place reasonable procedures to avoid such errors. *Fox v. Citicorp Credit Servs., Inc.*, 15 F.3d 1507 (9th Cir. 1994). The third prong of the bona fide error test "involves a two-step inquiry," first, whether the debt collector maintained - i.e. actually

employed or implemented - procedures to avoid errors; and, second, whether the

procedures were reasonably adapted to avoid the specific error at issue. *Johnson v. Riddle*,

443 F.3d 723, 729 (10th Cir. 2006). *See also Owen*, 2011 U.S. App. LEXIS 330 at *24; *Reichert*,

531 F.3d at 1006.

A.   REASONABLENESS OF PROCEDURES IS GENERALLY A QUESTION FOR THE JURY

The Eleventh Circuit noted that the third prong analysis is a "fact intensive inquiry"

that cannot typically be resolved via summary judgment. *Owen*, 2011 U.S. App. LEXIS 330

at *25. *See also Johnson v. Riddle*, 443 F.3d 723 (10th Cir. 2006); *Gill v. Kostroff*, 82 F.Supp. 2d

1354 (M.D. Fla. 2000) (whether defendant attorney had reasonable procedures to avoid suing

the wrong consumer was issue of fact for the jury and inappropriate for summary judgment);

*Narwick v. Wexler*, 901 F. Supp. 1275 (N.D. Ill. 1995).

B.   A REASONABLE JURY COULD CONCLUDE THAT RELIANCE ON TARGET NATIONAL BANK IS NOT A REASONABLE PROCEDURE

Defendants argue that reliance on Target National Bank is a procedure reasonably

adapted to avoid attempting to collect a debt from the wrong person. Whether or not this is

a "procedure", Plaintiff, for the sake of argument, will agree it is.

In support of their argument, Defendants claim, "absent situations involving identity

theft, Target has <u>always</u> provided the right information, and has <u>never</u> made a mistake with

regard to the identity of the account-holder."

As a matter of law, a debt collector's reliance on a creditor isn't sufficient even if that

creditor provided accurate information in the past.

Mere fact that a creditor provided accurate information to a debt collector in the

past did not, in and of itself, establish that debt collector's reliance was reasonable and a

substitute for the maintenance of adequate procedures to avoid future mistakes, as required to establish bona fide error defense. *Reichert v. National Credit Systems*, 531 F.3d 1002 (9th Cir. 2008).

Other federal courts have held the same. "Whatever minimum procedures are reasonable under the circumstances, surely more is required than reliance on a single person, no matter how well-trained and knowledgeable." *Gathuru v. Credit Control Servs.*, 623 F. Supp. 2d 113, 123 (D. Mass. 2009) (citing *Mirabal*, 537 F.2d 871); *Isham v. Gurstel, Staloch & Chargo, P.A.*, 2010 U.S. Dist. LEXIS 102407, 36 (D. Ariz. July 7, 2010) (reliance on the competence of a single person to properly intake and code the file is not sufficient); *McCollough v. Johnson, Rodenberg & Lauinger*, 610 F. Supp. 2d 1247, 1260 (D. Mont. 2009) (bona fide error defense denied where defendant had no process for verifying that the information was accurate; defendant's "proofreading could not address or prevent this FDCPA violation"); *Thomas v. Boscia*, 2009 WL 2778105 (S.D. Ind. Aug. 28, 2009) (The only preventive procedures relied on information provided by the clients, and thus the procedures were inadequate as a matter of law, since they were incapable of cross-checking).

Recently, the Ninth Circuit Court of Appeals, with The Honorable Sandra Day O'Connor, Associate Justice if the United States Supreme Court (Ret.) sitting by designation pursuant to 28 U.S.C. § 294(a), in *McCollough v. Johnson, Rodenburg & Launger, LLC*, 2011 U.S. App. LEXIS 4072, *637 F.3d 939, 2011 WL 746892 (9th Cir., Mar. 4, 2011), reiterated that a bona fide error defense does not protect a debt collector whose reliance on a creditor's representation is unreasonable. Unwarranted reliance on a client is not a procedure to avid error. "Indeed, in *Reichert.*, we held that "[t]he fact that a creditor provided accurate information in the past cannot in and of itself, establish that reliance in the present case was

reasonable and act as a substitute for the maintenance of adequate procedures to avoid future mistakes." The *McCollough* court notes that the contract between the debt collector and creditor disclaimed the accuracy and validity of the data provided.

In this case, there is a disclaimer in the Legal Collection Services Agreement between Defendant Patenaude & Felix and Target National Bank. **(Exhibit E).**   Paragraph nine on page eleven of Attachment 3, contains the disclaimer, which provides in relevant part, "Recipient acknowledges and agrees that Discloser provides Confidential Information disclosed hereunder on an "AS IS" basis, without warranties of any kind. Without limiting the foregoing, Discloser does not represent or warrant that such Confidential Information is accurate, complete or current." (emphasis in original).    Paragraph one on page nine of Attachment 3 defines "confidential information" to include, "information about past, present or potential customers". Based on this disclaimer, is it reasonable for Defendants to rely on Target. A reasonable jury could answer this question no.

In addition, Mr. Morris testified in his deposition that he doesn't know how Target maintains its records. He doesn't know how Target generates statements. He doesn't know how Target keeps track of payments. He never visited Target's office. **(Exhibit F, pg. 120).** He relies on the affidavit of Mr. Grim. **(Exhibit F, pp. 98, 121).** Yet he has no idea what Mr. Grim reviewed. **(Exhibit F, pg 137).** We know that Mr. Grim, despite swearing otherwise in his affidavit, didn't review any records.  **(Exhibits G & H)**. Based on this testimony and these facts, was it reasonable for Defendants to rely on Target. A reasonable jury could answer this question no.

Defendants may argue they aren't required to independently verify debts.  In *Hepsen v. Resurgent Capital Services,* 2010 U.S. App. LEXIS 12587 (11th Cir., June 17, 2010), the Court

noted that the Defendant correctly pointed out that the FDCPA does not impose an *affirmative* obligation on debt collectors to independently verify debts, but that lack of affirmative obligation does not also protect a debt collector who attempts to collect an inaccurate debt.  The Court concluded the Defendant did not show its procedures were reasonably adapted to avoid violating the FDCPA and did not satisfy the requirements for the bona fide error defense.

Furthermore, there is a question of fact as to whether "reliance on the creditor" is a procedure maintained by the Defendants. In *Allen v. NCO Fin Servs. Inc.*, 2002 U.S. Dist. LEXIS 10513 (N.D. Ill. June 10, 2002), the Court ruled there was no bona fide error defense where the defendant did not produce documents or affidavits of the procedures in place to avoid the error in question.

In this case, the Defendants did not provide any affidavits.  While they provided standard operating procedures , there is no mention of "reliance on a creditor" as a procedure. **(Exhibit I).**

       C.     A JURY COULD CONCLUDE THAT REQUESTING AN AFFIDAVIT OF IDENTITY THEFT AND POLICE REPORT IS NOT A REASONABLE PROCEDURE

Defendants claim that requesting an affidavit of identity theft and police report from the Plaintiff is a procedure reasonably adapted to avoid attempting to collect a debt from the wrong person.[1]

First, the Plaintiff never claimed her identity was stolen. **(Exhibit J).** Requesting an affidavit of identity theft and a police report opens the Plaintiff up to criminal liability.  The

---

[1] Defendants claim this is standard practice in the industry.  This is a conclusory statement with no proof.  The Defendants have not provided an expert report.  Even if this were true, it wouldn't matter since the Plaintiff never claimed her identity was stolen.

Court can take judicial notice that filing a false police report is a crime. Mr. Morris testified in his deposition that it is a crime to file a false police report. **(Exhibit F, pg. 101)**. The Target Affidavit of Unauthorized Use states, "A FALSE DECLARATION TO A FEDERALLY INSURED FINANCIAL INSTITUTION MAY BE A VIOLATION OF FEDERAL AND/OR STATE LAW." (emphasis in original). It says on page four of The ID Theft Affidavit, "I declare under penalty of perjury that the information I have provided in this affidavit is true and correct to the best of my knowledge." "Knowingly submitting false information on this form could subject you to criminal prosecution for perjury." **(Exhibit K).**

Is it reasonable to ask the Plaintiff to open herself up to criminal liability by filing a false affidavit and a false police report? This is exactly what Mr. Morris wanted her to do. **(Exhibit F, pg. 101).** A reasonable jury could answer this question no.

Second, Defendants demanding an affidavit of identity theft and a police report from Plaintiff is an act taken after the violation. It isn't a procedure reasonably adapted to avoid the error leading to the violation.

Third, there is a question of fact whether requesting a fraud affidavit and police report is a procedure maintained by the Defendants. *See Allen,* supra. In this case, the Defendants did not provide any affidavits. While they provided standard operating procedures **(Exhibit I)**, there is no mention of requesting an affidavit of identity theft and a police report.[2]

---

[2] Likewise, Defendants argue that it was a reasonable procedure to request information from the Plaintiff's Attorney. There is no evidence that this is a procedure maintained by the Defendants. And it was an act taken after the fact.

D.  A JURY COULD CONCLUDE THAT DEFENDANTS'
RELIANCE ON THE SKIP TRACE PERFORMED BY ACXIOM
IS NOT A REASONABLE PROCEDURE

The reasoning contained in the case law regarding a debt collector's reliance on information provided by a creditor applies here as well.

Skip trace results aren't always reliable. There is evidence of this from the testimony of Joel Rathbone, Esquire. Mr. Rathbone is the managing member for the law firm Javitch, Block & Rathbone. **(Exhibit L, pg. 5)**. Target initially provided the subject account to Mr. Rathbone's firm for collection. **(Exhibit L, pg 8)**. Mr. Rathbone has been using Acxiom since 2006. **(Exhibit L, pg. 32)**. Mr. Rathbone's firm is very familiar with Acxiom. They helped Acxiom develop its data download process in 2006. **(Exhibit L, pg 32).**

According to Mr. Rathbone, Acxiom doesn't provide any type of warranty regarding the information it provides. **(Exhibit L, pg 35)**. Acxiom provides disclaimers in its contract. **(Exhibit L pg. 35)**. While Mr. Rathbone does not recall the exact language of the disclaimer, he testified that all sources of data, including Acxiom, come with the following disclaimer, "the information that is contained in the report is not 100 percent accurate, and that whoever is going to rely on this report should also rely on other information to confirm it. **(Exhibit L, pg. 36).** This is so because someone has to input the data, and whomever is inputting this data could input it incorrectly. **(Exhibit L, pg. 36).** In essence, Defendants are relying on the one person whose job it was to input the data. The Defendants have know way of knowing if the information is accurate.

Based on the above referenced case law and Mr. Rathbone's testimony, a reasonable jury could conclude that Defendants' reliance on Acxiom was not reasonable.

**III.   15 U.S.C. § 1692f(1).**

Plaintiff agrees to withdraw her claim under this section of the FDCPA.

## IV.    STATUTE OF LIMITATIONS

The defendants' argument that plaintiff's FDCPA claims are time-barred is based on a faulty premise and failure to consider all the acts taken by defendants in their attempt to collect a debt from the wrong person.

The defendants believe plaintiff's FDCPA claims are premised upon "allegations of improper pursuit of debt collection litigation." This isn't correct. Rather, the FDCPA claims are premised upon allegations of improper pursuit of a debt both inside and outside of litigation.

The complaint in this case was filed on May 6, 2010. Plaintiff does not dispute that the FDCPA has a one year statute of limitations. So, any act on the part of the defendants in an attempt to collect the debt that occurred on or after May 6, 2009 wouldn't be time barred. The defendants' debt collection activities after May 6, 2009, which are undisputed, include the following:

\*       On May 12, 2009 Mr. Morris sent a collection letter to plaintiff's attorney in an attempt to collect the debt **(Exhibit M)**

\*       May 18, 2009 collection letter sent directly to the Plaintiff **(Exhibit N)**

\*       On June 27, 2009 Mr. Morris sent a collection letter to plaintiff's attorney in an attempt to collect the debt **(Exhibit M)**

\*       Defendants reinstated the complaint on July 2, 2009 **(Exhibit M)**

\*       On July 18, 2009 Mr. Morris sent a collection letter to plaintiff's attorney in an attempt to collect the debt **(Exhibit M)**

\*       On July 24, 2009, Mr. Morris sent a debt collection to plaintiff's attorney in an attempt to collect the debt **(Exhibit M)**

\*       On August 11, 2009, Mr. Morris sent to plaintiff and her attorney an "Important Notice"[3] in an attempt to collect the debt **(Exhibit M)**

In Count I of the Second Amended Complaint, plaintiff alleges defendants violated the FDCPA:

\*       In their attempt to collect a debt from [plaintiff], [defendants] falsely represented the character, amount and legal status of the alleged debt owed by Higgins in violation of 15 U.S.C. § 1692e(2)(A) **(Exhibit M)**

Based on paragraph 52 of the second amended complaint, plaintiff's claims are not based solely on the filing of a debt collection complaint against plaintiff.  Rather, it covers defendants' "attempt to collect a debt" from plaintiff. This would include letters sent to plaintiff's attorney, as well as litigation activities such as serving the "Important Notice", which was sent directly to the plaintiff.

The Third Circuit Court of Appeals recently held that a communication from a debt collector to a consumer's attorney is actionable under the FDCPA. *Allen v. LaSalle Bank, N.A.*, ___F.3d___, No. 09-1466, 2011 WL 94420 (3d Cir. Jan 12, 2011), *Ogbin v. Fein, Such, Kahn and Shepard, P.C.*, No. 09-2829 (3d Cir. Feb. 22, 2011) (Not -Precedential).  These decisions are consistent with the FDCPA's definition of "communication": "the conveying of information regarding a debt directly or indirectly to any person through any medium."  The

_____

[3] Pennsylvania Rule of Civil Procedure 237.1(a)(2)(i) provides that a default judgment cannot be entered unless the praecipe for entry of default includes a certification that a written notice of intention to file the praecipe was mailed or delivered in the case of a judgment by default, after the failure to plead to a complaint and at least ten days prior to the filing of the praecipe to the party against whom judgment is to be entered.  This written notice is commonly referred to as an "Important Notice" or "Ten Day Notice".

letters attached to the second amended complaint convey information regarding a debt and therefore, meet the definition of "communication."

In addition, as stated above, the FDCPA "applies to litigation activities of lawyers", *Heintz*, supra.  Serving the "important notice" is a litigation activity.  Likewise, reinstating the complaint is also a litigation activity.[4]  Thus, even if plaintiff's FDCPA claims were based solely on the filing of a complaint against plaintiff, the plaintiff's claims aren't barred.  In their argument, the defendants ignore the fact that they reinstated the complaint on July 2, 2009.  Reinstating a complaint in Pennsylvania is no different than the filing of an original complaint.  In fact, at the time the defendants reinstated the complaint, the original complaint was no longer valid since it wasn't served in a timely manner.

## V.     DRAGONETTI ACT

Wrongful Use of Civil Proceedings, also known as the Dragonetti Act, is the codification in Pennsylvania of the common law torts of malicious prosecution and abuse of process and is set forth at 42 Pa.C.S.S. 8351 et seq.  In pertinent part, it requires that for a person to be liable for wrongful use of civil proceedings he must take part in the procurement, initiation or continuation of civil proceedings against another while acting in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based. It also requires that the proceedings be terminated in favor of the Defendant in the underlying case {42 Pa.C.S.A. 8351(a)(1).}

---

[4] Original process shall be served within the Commonwealth within thirty days after the issuance of the writ or the filing of the complaint.  If service within the Commonwealth is not made within the time prescribed by subdivision (a) of this rule..... the prothonotary upon praecipe and upon presentation of the original process, shall continue its validity by reissuing the writ or reinstating the complaint... Pa.R.C.P. 401.

Contrary to the assertion in the Defendants' brief, the Plaintiff in a wrongful use case need not directly prove that the Defendants acted for an improper or malicious purpose. An improper purpose may be inferred where the action is filed without justification. *Gentzler v. Atlee*, 660 A.2d 1378,1385 (Pa. Super. 1995). Furthermore, such a claim can successfully be brought either if the underlying action was filed without probable cause or in a grossly negligent manner. *Bannar v. Miller*, 701 A.2d 242 (Pa. Super. 1997).

The wrongful use statute defines probable cause as a reasonable belief in the existence of facts upon which the claim is based and either: 1.) a reasonable belief that under those facts a claim may be valid under the existing or developing law or; 2.) belief to this effect in reliance upon the advise of counsel sought in good faith and given after full disclosure of all relevant facts within his knowledge and information; or 3.) belief as an attorney of record in good faith that his procurement, initiation or continuation of a civil case is not intended to merely harass or maliciously injure the opposite party. {42 Pa.C.S.A. 8352}.

The Plaintiff suggests that the evidence in the case at bar shows a lack of probable cause for the initiation of the underlying action.

Mr. Morris testified that he was the only attorney licensed in Pennsylvania handling the underlying debt collection suit. **(Exhibit F, pg. 105)**. Patenaude & Felix receives from Target a charge off statement[5], sometimes an application, (although that isn't required), and an affidavit. Mr. Morris isn't aware if Target sent any credit card statements to the Plaintiff. **(Exhibit F, pg. 132)**. In this case, the affidavit was allegedly signed by Target employee Adam Grim. **(Exhibit F, pg. 112).** Mr. Morris doesn't recall ever

---

[5] A charge off statement is the last statement that shows a zero balance. (Morris depo. pg. 112).

reviewing the credit card application.  He doesn't know if Target maintains the original application. **(Exhibit F  pg. 97)**.  He isn't sure if he requested the application.  **(Exhibit F, pg. 148).** The underlying debt collection complaint is a form printed out by a paralegal. **(Exhibit F, pg. 126)**.  While the complaint demands interest at a rate of 19.99%, Mr. Morris has no idea how they came up with that number. **(Exhibit F, pg 127).**  He isn't aware if there is any physical document permitting Target to seek interest at a rate of 19.99%.  **(Exhibit F, pg. 130)**.

Mr. Morris claims he reviewed the underlying debt collection complaint before it was filed.  However, there is nothing documented in Defendants' claim notes that would reflect this review. **(Exhibit F, pp. 126-127)**.  Mr. Morris relied on the affidavit provided by Mr. Grim. **(Exhibit F, pp. 98, 121)**.  However, he has no idea what Mr. Grim reviewed. **(Exhibit F,  pg. 137)**.  We know that Mr. Grim, despite swearing otherwise in his affidavit, didn't review any records.  **(Exhibits G &H)**.  While he relies on the Grim affidavit, Mr. Morris doesn't know how Target maintains its records.  He doesn't know how Target generates statements.  He doesn't know how Target keeps track of payments.  He never visited Targets offices. **(Exhibit F,  pg. 120)**.

The underlying acton was based on a contract.  Yet, the Defendants filed the underlying action without possession of the contract or without even having reviewed it.  Any entitlement to the interest claimed in the underlying action would have been established by the contract.  Yet, despite not having the contract, the Defendants filed a Complaint against the wrong person asserting an entitlement to 19.99% interest.

Attached to the complaint was one statement with a closing date of November 8, 2008.  **(Exhibit O)**. The statement does not reflect any purchases or payments.  Without

statements beginning with a zero balance up through the date of default, there is know way of knowing whether the amount set forth in the statement attached to the complaint is accurate. Statements beginning with a zero balance up through the date of default are required to prove a credit card debt collection case in Pennsylvania. Defendants never attempted to obtain all of the statements prior to filing the complaint. Defendants never reviewed statements that would give guidance as to whether the amounts demanded in the debt collection action were accurate.

When served with discovery requests, the Defendants dismissed the underlying complaint. There is inconsistent testimony as to why the debt collection action was discontinued. The Plaintiff filed a complaint with the Pennsylvania Attorney General's Office. **(Exhibit P)**. In his letter responding to the complaint, Mr. Morris writes, "Based upon information provided to us by Attorney Monzo's Office, our client informed us that we should discontinue the law suit and close the file." **(Exhibit Q)**. In his deposition, Mr. Morris testified that he made the decision to discontinue the lawsuit without prejudice and he didn't recall if he received anything from Mr. Monzo's office that would lead him to advise his client to close the account. **(Exhibit F, pp. 191-192)**. Based on this inconsistent testimony, a reasonable jury could conclude that the complaint was dismissed as a result of Mr. Morris receiving a Request for Production of Documents from Plaintiff's Attorney.

Not only did the Defendants fail to possess evidence sufficient to make out a prima facie case of liability on the underlying debt, the record is barren of any attempt to investigate what evidence they did have and try to obtain what was necessary before filing the underlying complaint. Such indifference regarding pre-filing investigation was harshly criticized by the Pennsylvania Supreme Court in *Thunberg v. Strause*, 545 Pa. 607, 682 A.2d

295 (1996), a case brought for counsel fees under 42 Pa.C.S.A. 2503(9) but which used the same standard for fee awards as those for recovery under wrongful use.

In *Gigli v. Palisades Collection, L.L.C.*, Civil Action No. 03-1428, 2008 WL 38532951 (M.D. Pa. Aug. 14, 2008) (Vanaskie, J.), the plaintiff filed suit alleging, among other claims, defendants violated the Dragonetti Act. Judge Vanaskie denied defendants' motion for summary judgment on this claim. Like the defendants in this case, the defendants in *Gigli* in argued that Ms. Gigli's Dragonetti Act claim failed as a matter of law because she could not prove the defendants filed the state court debt collection complaint for an improper purpose. They further argued that an attorney is not liable, even if he initiates a civil proceeding on behalf of his client without probable cause if he acts primarily for the purpose of aiding his client in obtaining proper adjudication of his claim.  This is the identical argument made by the defendants in this case. Rejecting this argument, Judge Vanaskie noted Pennsylvania follows *Restatement (Second) of Torts* § 674 cmt. d (1977) with regard to attorney liability in Dragonetti Act claims. After reciting Comment d, Judge Vanaskie quoted *Bannar v. Miller*, 701 A.2d 242, 248 (Pa. Super. Ct. 1997), "Based on [the reasoning of Comment d], the attorney may bring claims without probable cause in order to obtain the proper adjudication of the client's claims <u>upon his client's insistence after disclosing to the client the likelihood of the claim's success</u> (emphasis in original).  Since there was no evidence that defendants disclosed to their client (Palisades) the probability of succeeding against Ms. Gigli on its debt collection claim or that, following disclosure, Palisades insisted that the claim be pursued, Judge Vanaskie concluded that the defendants could not rely on the comment d safe harbor.

Likewise, in this case, there is no evidence that defendants disclosed to Target the probability of succeeding against the plaintiff on its debt collection claim or that, following disclosure, Target insisted that the claim be pursued.  Like the Defendants in *Gigli,* the Defendants in this case should not be permitted to rely on the comment d safe harbor.

Judge Vanaskie also rejected defendants contention that direct evidence of improper purpose is essential:

> Defendants' contention assumes that direct evidence of improper purpose is essential  But as the superior court observed in *Gentzler v. Atlee*, 660 A.2d 1378, 1385 (Pa. Super. Ct. 1995), "the plaintiff in a wrongful use of civil proceedings action need not obtain the defendant's outright 'confession' of improper purpose; an improper purpose may be inferred where the action is filed without justification." *See also Buchleitner v. Perer*, 794 A.2d 366, 377 (Pa. Super. Ct. 2002) ("Pennsylvania law also states that improper purpose may be inferred from want of probable cause to maintain or continue the proceedings."). In this matter, Ms. Gigli contends that there is evidence that Defendants had no probable cause to file suit against her. (Citation omitted). If the jury agrees that probable case (sic) was lacking, she notes, the jury could reasonably conclude Defendants commenced the debt collection action for an improper purpose. (Citation omitted).  Therefore, the Court must determine whether the evidence is sufficient to permit the jury to find the absence of probable cause.

*Gigli*  at \*31.

In this case, if the Court determines that the evidence is sufficient to permit the jury to find the absence of probable cause, defendants' motion for summary judgment as to the Dragonetti Act claim must be denied. "Usually, the existence of probable cause is a question of law for the court rather than a jury question, but may be submitted to the jury when facts material to the issue of probable cause are in controversy." *Gigli* at \*32 (citation omitted).

Whether probable cause existed at the time the debt collection acton was filed is informed by the underlying substantive law.  *Gigli* at \*32 (citation omitted).  The failure to repay credit extended pursuant to an agreement constitutes a breach of contract.  To

succeed in an acton for breach of contract, a plaintiff must prove (1) the existence of a contract, including its essential terms, (2) a breach of duty imposed by the contract and (3) resultant damages. The burden is on the plaintiff to prove by a preponderance of the evidence the existence of the contract to which the defendant is a party. *Gigli at \*32,33 (citations and quotations omitted)*.

In *Gigli,* Judge Vanaskie held that he was unable to conclude as a matter of law that probable cause existed to initiate the debt collection action. *Gigli* at \*34,35:

> Given the paucity of available evidence - along with Defendants' precipitous dismissal of the action in response to a request for documents from Ms. Gigli's attorney - a jury could conclude that [the defendants] brought the debt collection action without a reasonable belief in the claim's factual basis or legal viability.  And because a jury could determine that the state court action was initiated without probable cause, it could reasonably infer the action was commenced for an improper purpose and disbelieve [the attorney's] statement that he filed the complaint to pursue a proper adjudication of Palisade's claim.

The Court  reached its  holding based on the following facts:

* prior to filing suit, the attorney never reviewed a credit card agreement

* prior to filing suit, the attorney never reviewed any periodic account statements or credit card receipts

* at the time the state court debt collection action was filed, none of the defendants possessed a credit card account agreement signed by Ms. Gigli

* at the time the state court debt collection action was filed, none of the defendants possessed any documents showing the computation of the unpaid balance or indicating actual use of the credit card by Ms. Gigli

*Gigli* at \*34.

In this case, Attorney Morris prior to filing suit:

* never reviewed a credit card agreement

\*      never reviewed more than one periodic account statement[6]

\*      never reviewed credit card receipts

Furthermore, at the time the state court debt collection was filed and reinstated:

\*      none of the defendants possessed a credit card account agreement signed by the plaintiff

\*      none of the defendants possessed any documents showing the computation of the unpaid balance or indicating actual use of the credit card by the plaintiff

For the same reasons in *Gigli,* probable cause cannot be determined as a matter of law in this case.

The defendants also argue that summary judgment should be granted as to plaintiff's Dragonetti Act claim since plaintiff does not have an expert report.  They rely on *Schmidt v. Currie*, 470 F. Supp.2d,477,482 (E.D. Pa. 2005), *aff'd* 217 Fed Appx. 153 (3d Cir. 2007). Defendant's argument and reliance on *Schmidt* should be rejected for the following reasons:

\*      The Court in *Schmidt* did not cite any Pennsylvania case law for the proposition that an expert report is required to establish a Dragonetti Act claim

\*      In denying defendant's motion for summary judgment, the Court in *Gigli* made no mention of an expert report and a review of the docket through PACER shows Ms. Gigli did not rely on an expert report

---

[6] The Pennsylvania Superior Court has considered the issue of what documentation is required in a credit card collection action to prove the existence of a contract in *Atlantic Credit and Finance Inc. v. Giuliana*, 829 A.2d 340, 345 (Pa. Super. 2003).  Therein, Atlantic Credit filed a complaint alleging that the defendants were indebted to GM Card and that Atlantic Credit had purchased the defendants' account from GM Card.  Atlantic Credit, however, failed to attach to the complaint any contract or cardholder agreement between GM Card and the defendants. Atlantic Credit did attach a single sheet which appeared to be a monthly statement from GM Card addressed to the defendants, which listed the total due on the account and the interest rate. The Superior Court concluded that Atlantic Credit's "failure to attach the writings which assertedly establish [the creditor's] right to a judgment...is fatal to the claims set forth in [the creditor's] complaint. *Atlantic Credit*, 829 A.2d at 345.

\*      In *Schmidt*, the defendants obtained an expert report concluding that they lived up to the appropriate standard of care.  In this case, the defendants did not produce an expert report[7]

\*      *Schmidt* arose out of a medical malpractice claim, not an alleged breach of a credit card agreement.  According to the *Schmidt* Court, the finder of fact in that case would have to determine if the defendant fell below the standard of care required of medical malpractice lawyers in investigating a client's case and pursuing the matter through trial.  In this case, the facts aren't in dispute and the existence of probable cause is a legal question determined by the Court.  Like the Court in *Gigli*, this Court can examine the relevant case law and determine if probable cause existed at the time the complaint was filed.  Even if facts were in dispute, the plaintiff could call Mr. Morris in her case and question him regarding *Atlantic Credit*, supra. The plaintiff does not need an expert for this.

\*      Unlike *Schmidt*, this case isn't a Dragonetti claim sounding in professional negligence.  It is not a complex matter requiring an expert.

## VI.   CONCLUSION

For the reasons stated above, the Defendants are not entitled to summary judgment.

Respectfully Submitted,

JEFFREY L. SUHER, P.C.

---

[7] "The defendants have submitted the testimony of an expert who has carefully and thoroughly explained the standard of care and his view that the defendants met that standard.  Having done this, the burden 'devolved upon [the plaintiff] to oppose [the defendant's] factual averments with expert evidence demonstrating the [defendant's] conduct failed to meet the appropriate standard of care." Dr. Schmidt has not responded with an expert.  Because this case is a complex matter, expert testimony is required to establish the standard of care. *Schmidt* at F. Supp. 2d 484 (citation omitted).

/s/ Jeffrey L. Suher
Jeffrey L. Suher, Esquire
Pa. I.D. # 74924
4328 Old Wm Penn Hwy, Ste 2J
Monroeville, PA 15146
412-374-9005
412-374-0799 (fax)
lawfirm@jeffcanhelp.com

**JURY TRIAL DEMANDED**